UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-20321-CR-ALTONAGA/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL STEIN, *et al.*,

    Defendants.

_____/

### ORDER ON DEFENDANT'S MOTION TO QUASH

This matter is before the Court on Michael Stein's ("Defendant") motion to quash two grand jury subpoenas issued to Growthlogix, LLC ("Growthlogix"), and 1523 Holdings, LLC ("1523 Holdings") [D.E. 15]. The Government responded to the motion on June 29, 2021 [D.E. 21] to which Defendant replied on July 6, 2021. [D.E. 23]. Therefore, Defendant's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authorities, and for the reasons discussed below, Defendant's motion to quash is **DENIED**.[1]

---

[1] On June 16, 2021, the Honorable Cecilia Altonaga referred Defendant's motion to the undersigned Magistrate Judge for disposition. [D.E. 16].

## I.   BACKGROUND

A federal grand jury in the Southern District of Florida is investigating potential fraud, health care kickbacks, and violations related to genetic testing offered to Medicare recipients. On May 25, 2021, the Government served Defendant with two grand jury subpoenas directed to Growthlogix and 1523 Holdings. Both of these companies are Florida limited liability corporations where Defendant is the sole manager, registered agent, owner, and operator. Each subpoena commands the companies to appear and testify before a grand jury or, in lieu of a personal appearance, to provide the Department of Justice with "any [and] all records associated with any work performed by this entity, or any of its employees or agents, for the following companies, from January 1, 2019 to present: Panda Conservation Group, LLC, The Health Awareness Project, Amerihealth Laboratory, LLC, MP3 Laboratory, LLC [and] R&O Smock & Associates, LLC d/b/a/ Atlantic Labs." [D.E. 15-1, 2 at 4]. The subpoenas also seek, among other things, contracts, communications, financial records, and corporate work product, including a request that the documents be returned with a standard business records certification.

When the Government served Defendant with the two subpoenas, a grand also returned a nine-count indictment with allegations that he took part in a conspiracy to defraud the United States and solicited the receipt of kickbacks in connection with a federal health program. Although trial is set for a two-week period commencing September 27, 2021, Defendant seeks to quash the Government's subpoenas because they violate the Fifth Amendment in at least three respects. [D.E. 8].

## II. APPLICABLE PRINCIPLES AND LAW

A party seeking to enforce a subpoena must demonstrate that the evidence to be gained is relevant, admissible, and specific. *See United States v. Nixon,* 418 U.S. 683, 700 (1974). To do so, the requesting party must be able to set forth the generally anticipated contents of the requested documents and identify the basis for believing the documents are relevant. *See United States v. Blake,* 2014 WL 1764679, at *4 (S.D. Fla. Mar. 25, 2014). The law presumes, absent a showing to the contrary, that a grand jury acts within its legitimate scope of authority. *See United States v. R. Enterprises, Inc.,* 498 U.S. 292, 300–01 (1991). However, a court may quash a subpoena if compliance would be unreasonable or oppressive and the burden of showing unreasonableness of a grand jury subpoena is on the recipient who seeks to avoid compliance. *See* Fed. Crim. P. 17(c)(2); *R. Enterprises, Inc.*, 498 U.S. at 301. Thus, generally speaking, the power of a grand jury to compel testimony or documents "is limited only in that production may not be compelled in violation of a valid privilege established under the common law, statutes or the Constitution." *Vingelli v. U.S., Drug Enf't Agency*, 992 F.2d 449, 452 (2d Cir. 1993) (citing *United States v. Calandra,* 414 U.S. 338, 346 (1974)).

## III. ANALYSIS

Defendant seeks to quash the Government's two grand jury subpoenas because – as the sole owner, operator, manager, and registered agent of the subpoenaed companies – he fears that any response that he provides could be used

to prosecute him in connection with a pending prosecution.[2]  That is, Defendant is concerned that any production or oral testimony that he provides might be used as evidence against him in violation of his Fifth Amendment rights.[3]  Although Defendant concedes that the Fifth Amendment does not generally apply to corporations, he says that neither the Supreme Court nor the Eleventh Circuit has answered the narrow question of whether a custodian, as the *sole employee and officer* of a corporation, is obligated to comply with a subpoena that may be self-incriminating when the Government indicts that person.  *See Braswell v. United States*, 487 U.S. 99, 118 (1988) ("We leave open the question whether the agency rationale supports compelling a custodian to produce corporate records when the custodian is able to establish, by showing for example that he is the sole employee and officer of the corporation, that the jury would inevitably conclude that he produced the records.").

---

[2]     There is no dispute between the parties that Defendant is the president and 100% shareholder for each of the subpoenaed companies.

[3]     The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. "Although the Fifth Amendment protects individuals from compelled, incriminating testimony, it does not do the same for corporations; an agent of a 'collective entity' may not refuse to produce documents even when those documents will incriminate that entity." *Grand Jury Subpoena Dated Apr. 9, 1996 v. Smith*, 87 F.3d 1198, 1200 (11th Cir. 1996) (citing *Hale v. Henkel*, 201 U.S. 43 (1906); *United States v. White*, 322 U.S. 694 (1944)).  In addition, "an agent of a corporation may not refuse to turn over corporate records even when the content of those records may incriminate the subpoenaed agent herself." *Id.* (citation omitted); *see also Bellis v. United States*, 417 U.S. 85, 100 (1974) ("It is well settled that no privilege can be claimed by the custodian of corporate records, *regardless of how small the corporation may be*.") (emphasis added) (citing cases).

Defendant's arguments can be distilled into the three subparts.  First, Defendant claims that there is no requirement to comply with a grand jury document request because, as the sole principal of a corporation, any compliance would violate his Fifth Amendment protections against self-incrimination.  Second, Defendant says that a grand jury cannot compel him to execute a records certification because that would convey his "'thoughts and statements' which the Eleventh Circuit has held 'belong' to [him] personally."  [D.E. 15 at 15].  Finally, Defendant requests that the Court quash the subpoenas because the purpose of the ongoing grand jury investigation is to prosecute a pending case.  We consider each argument in turn.

### A. *Whether the Fifth Amendment Applies to the Production of Documents*

Defendant's first challenge is directed at two Fifth Amendment doctrines – the act of production doctrine and the collective entity doctrine.  The act of production doctrine recognizes "that the act of producing documents in response to a subpoena may have a compelled testimonial aspect," in that the act "may implicitly communicate 'statements of fact,'" such as "that the papers existed, were in [the producer's] possession or control, and were authentic." *United States v. Hubbell*, 530 U.S. 27, 36 (2000).  The collective entity doctrine reflects the right to resist compelled self-incrimination as a "personal privilege." *Bellis*, 417 U.S. at 90.  This privilege applies to individuals and sole proprietorships where they do not exist separately from the individuals that comprise them. *See Braswell*, 487 U.S. at 104.

5

Defendant says that a grand jury subpoena requiring a production of documents violates his Fifth Amendment rights following the Supreme Court's decision in *Braswell*. There, a corporate custodian of two small, closely held corporations sought to assert his Fifth Amendment privilege to refuse the production of corporate documents because producing the requested items would incriminate him personally as the president and sole shareholder. *Id.* at 100–01. The corporations had only three directors, and Braswell argued that they were so small that they constituted nothing more than his alter egos. He reasoned, much like Defendant does here, that he had a constitutional right to invoke his Fifth Amendment privilege against self-incrimination.

The Supreme Court rejected Braswell's arguments and held that a corporate "custodian may not resist a subpoena for corporate records on Fifth Amendment grounds," *id.* at 113, regardless of whether the custodian could "show that his act of production would entail testimonial self-incrimination," *id.* at 104. The Court further stated that Braswell "operated his business through the corporate form, and [that] we have long recognized that, for purposes of the Fifth Amendment, corporations and other collective entities are treated differently from individuals." *Id.* The Court subsequently reaffirmed the principle that the "plain mandate of [its prior case law] is that without regard to whether the subpoena is addressed to the corporation, or as here, to the individual in his capacity as a custodian, a corporate custodian such as petitioner may not resist a subpoena for corporate records on Fifth Amendment grounds." *Id.* at 109. However, in a

footnote, the Court left "open the question of whether the agency rationale supports compelling a custodian to produce corporate records when the custodian is able to establish, by showing for example that he is the sole employee and officer of the corporation, that the jury would inevitably conclude that he produced the records." *Id.* at 118 n. 11.

Defendant relies heavily on this footnote because this is where the Court acknowledged the unanswered question of whether a sole principal of a corporation can be compelled to produce documents under an agency theory. Defendant says that an exception to the general rule should exist and that, even if *Braswell* applies to single-person corporations, the case stands on shaky legal ground because of the Supreme Court's recent decisions in analogous cases.[4] Defendant references, for example, two cases in *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) and *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010), because they each reflect a growing trend of a majority of the Supreme Court Justices recognizing the constitutional rights of corporations. However, other than these cases broadly concerning corporations, it remains unclear how *Hobby Lobby* and *Citizens United* undermine *Braswell*. Defendant merely suggests that it does, but he never applies the specific facts of either case to *Braswell*. And the reason for that omission might be due to the fact that each case touches on discrete constitutional issues.

In any event, "we remain bound by *Braswell* until the Supreme Court says otherwise," *In re Twelve Grand Jury Subpoenas*, 908 F.3d 525, 529 (9th Cir. 2018),

---

[4] Defendant points out that *Braswell* was a 5-4 decision with Justices Brennan, Marshall, Scalia, and Kennedy dissenting.

7

under the principle that "the Court of Appeals follow the case which directly controls," even if it "appears to rest on reasons rejected in some other line of decisions," and thereby to "leav[e] to th[e] Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)). That principle applies here because – while Defendant references legal scholars that have called into doubt whether *Braswell* was correctly decided – it not for us to decide whether the case remains good law until the Court makes that final determination.

However, even if there was any lingering doubt as to whether *Braswell* remains good law, federal appellate courts have put that question to bed. The Third Circuit has found, for example, that "whatever circumstances were contemplated by the . . . footnote [in *Braswell* it] no way detracts from its holding that a custodian may not resist a subpoena for corporate records on the ground that the act of production might incriminate him." *In re Grand Jury Empaneled on May 9, 2014*, 786 F.3d 255, 261 (3d Cir. 2015) (citing *Braswell*, 487 U.S. at 119); *see also In re Grand Jury Subpoena (John Doe, Inc.)*, 991 F. Supp. 2d 968, 974 (E.D. Mich. 2014) ("Although the Supreme Court left this question open, no lower court has recognized an exception that would permit a custodian of a one-person corporation to claim a Fifth Amendment privilege to resist a subpoena for corporate documents.").

Applying *Braswell* to single-person corporations is also a sensible approach in the Second Circuit because, when looking to the interplay between corporations and the Fifth Amendment, the case serves three main objectives:

8

> First, it prevents the erosion of the unchallenged rule that the [corporation] itself is not entitled to claim any Fifth Amendment privilege. Second, it recognizes that the decision to incorporate is freely made and generates benefits, such as limited liability, and burdens, such as the need to respond to subpoenas for corporate records. Third, it avoids creating a category of organizations effectively immune from regulation by virtue of being beyond the reach of the Government's subpoena power.

*In re Grand Jury Subpoena Issued June 18, 2009,* 593 F.3d at 158–59 (2d Cir. 2010) (quotation marks and internal citation omitted) (alteration in original). So, even if Defendant is a single-person corporation, her separate legal entity classifies as "a corporation," and "a state law-regulated entity" because it has a "separate legal existence from [the target of the subpoena] shielding [Defendant] from its liabilities." *United States v. Stone*, 976 F.2d 909, 912 (4th Cir. 1992) ("We . . . affirm the district court's holding that Wujkowski's status as the sole shareholder, director, officer, and employee of Ashford Associates did not excuse him from the duty of producing Ashford corporate documents that he held in his representative capacity."); *see also Amato v. United States*, 450 F.3d 46, 52 (1st Cir. 2006) ("Our caselaw rejects Amato's argument suggesting that we should recognize an exception to the collective-entity doctrine where the custodian of records is the corporation's sole shareholder, director, officer and employee.").

It goes without saying that Defendant could have chosen to form his companies as an unincorporated sole proprietorship and enjoyed the benefits of the privilege against self-incrimination. *See United States v. Doe,* 465 U.S. 605, 608 (1984). But, that is not what Defendant chose to do. He opted instead for the corporate form and to gain the benefits that came with that establishment.

9

Defendant "cannot now disregard the corporate form to shield his business records from production" because, even as the sole principal of a corporation, every appellate court that has considered the question leftover in *Braswell* has concluded that it applies to one-person corporations. *See Stone*, 976 F.2d at 912 (citing *United States v. Lawn Builders of New England, Inc.,* 856 F.2d 388, 394 (1st Cir.1988); *In re Grand Jury Proceedings (John Doe Co.),* 838 F.2d 624, 627 (1st Cir. 1988); *In re Grand Jury Proceedings (Morganstern),* 771 F.2d 143, 148 (6th Cir. 1985) (en banc); *In re Two Grand Jury Subpoenae Duces Tecum,* 769 F.2d 52, 59 (2d Cir. 1985)); *see also In re Grand Jury Empaneled on May 9, 2014,* 786 F.3d at 263 ("Given that we find Appellants have advanced no persuasive rationale as to why the reasoning of *Bellis* and *Braswell* does not apply to one-person corporations like that operated by Doe, we hold that the collective entity doctrine applies to the Medical Practice, such that Doe may not rely on the Fifth Amendment to avoid compliance with the subpoena.").

Accordingly, Defendant has no Fifth Amendment privilege over a grand jury's subpoena requesting a production of documents because, even as the sole principal of a corporation, he stands in the shoes of these companies as a company representative as opposed to his personal capacity. *See Braswell*, 487 U.S. at 109–10 ("From *Wilson* forward, the Court has consistently recognized that the custodian of corporate or entity records holds those documents in a representative rather than a personal capacity.").

### B. *Whether the Fifth Amendment Prohibits the Authentication of Documents*

Defendant's next argument is that he is not required under the Fifth Amendment to authenticate documents under Fed. R. Civ. 901(a) or certify that the items are business records under Fed. R. Evid. 902(11). This argument misses the mark[5] because "[r]equiring [a] custodian to identify or authenticate the documents for admission in evidence merely makes what is implicit in the production itself." *Braswell*, 487 U.S. at 114 (quoting *Curcio v. United States*, 354 U.S. 118, 125 (1957)). In other words, "[i]n identifying or authenticating [the] records produced, [Defendant] would make explicit what is implicit in the production itself; that is, that these corporate records are produced *by the corporation* pursuant to the subpoena," and "[t]his identification process involves little, if any, further danger of incrimination beyond that which has already attached as a result of the act of production." *Macon-Bibb Cty. Hosp. Auth. v. Cont'l Ins. Co.*, 673 F. Supp. 1580, 1584 (M.D. Ga. 1987) (emphasis in original) (citation omitted); *see also In re Grand Jury Subpoena*, 635 F. Supp. 569, 572 (N.D. Ga. 1986) ("By producing the requested records, the movant would not be attesting to his personal possession of them but to their existence and possession by the corporation.").

---

[5] Judge Bloom rejected this same argument in June of this year because, just like a defendant cannot invoke the Fifth Amendment with respect to a production of documents, the same principle applies to authentication. *See In re: Three Subpoenas to Testify Before, and Produce Documents for, a Grand Jury*, FGJ-19-02-MIA, at n.2 (June 8, 2021) ("Because the Court concludes that Movant may not invoke the protections of the Fifth Amendment against the compelled production of the Companies' documents, Movant's argument that he may not be called to identify and authenticate the documents he is required to produce is without merit.") (citing *United States v. Medlin*, 986 F.2d 463, 468 (11th Cir. 1993)).

11

Defendant's argument is weaker than many analogous cases because the Government here does not even seek to compel him to be the one to respond to the subpoenas, to authenticate the documents, or to sign the standard business records certification. The Government only asks that a custodian of records comply with the subpoenas and that, if Defendant refuses to do so, the companies can hire someone for that specific purpose. *See Braswell*, 487 U.S. at 116 ("[I]t is no doubt true that if a subpoena is addressed to a corporation, the corporation 'must find some means by which to comply because no Fifth Amendment defense is available to it.' The means most commonly used to comply is the appointment of an alternate custodian.") (citations omitted).

This is consistent with Eleventh Circuit precedent because – while companies may enlist a custodian to respond to subpoenas – they may not refuse to respond entirely on the basis that doing so is self-incriminating:

> [E]ven if the situation is unusual and a corporation's custodian of records would incriminate himself if he were to act to produce the company's records, this still does not relieve the corporation of its continuing obligation to produce the subpoenaed documents. In such a situation the corporation must appoint some other employee to produce the records, and if no existing employee could produce records without incriminating himself by such an act, the corporation may be required to produce the records by supplying an entirely new agent who has no previous connection with the corporation that might place him in a position where his testimonial act of production would be self-incriminating. *There simply is no situation in which the fifth amendment would prevent a corporation from producing corporate records, for the corporation itself has no fifth amendment privilege.*

*In re Grand Jury No. 86-3 (Will Roberts Corp.)*, 816 F.2d 569, 574 (11th Cir. 1987) (abrogated on other grounds) (citing *United States v. Barth,* 745 F.2d 184, 189 (2d

12

Cir. 1984)). If Defendant has any concerns of self-incrimination, he has every opportunity on behalf of his companies to "appoint an agent to produce and to authenticate the requested documents rather than seeking to compel [Defendant] personally to do so." *In re Grand Jury Subpoena*, 635 F. Supp. 569, 572 (N.D. Ga. 1986). Whatever choice Defendant makes, the Fifth Amendment "does not protect an individual from being incriminated by a third party's testimonial act of producing records." *In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d at 57. Hence, Defendant's second argument is equally without merit. *See United States v. Medlin*, 986 F.2d 463, 468 (11th Cir. 1993) ("To the extent that he will be called on merely to identify and authenticate the documents he is required to produce—which the government argues in its brief is the only testimony that will be sought from him—that argument is without merit.") (citing *Braswell,* 487 U.S. at 114–15).[6]

### C. *Whether the Subpoenas Seek Information for a Superseding Indictment*

Defendant's final argument is that the grand jury subpoenas should be quashed because they seek testimony and documents not discoverable under Fed. R.

---

[6] Defendant notes in his reply that, as the sole employee and officer of the companies, there is no other person who can competently serve as custodian without first conversing with him to obtain the required knowledge to respond adequately to the subpoenas. Yet, while that argument might not be entirely without merit, Defendant is conflating his personal interests with the corporation. The corporation is the one that appoints the custodian – not Defendant in his personal capacity. Defendant conflates the two, but he ignores the corporate form. In the other words, just because Defendant is the only employee and officer cannot insulate him from having the corporation respond to a grand jury subpoena. He can retain a third party to do so.

Crim. P. 16. Defendant suspects that the sole purpose of the Government's subpoenas is to gather information on him in his personal capacity and to assemble evidence for a pending prosecution. Defendant says that this is impermissible because "[t]he law is settled in this circuit and elsewhere that '[i]t is improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial.'" *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26, 29 (2d Cir. 1985) (quoting *United States v. Dardi,* 330 F.2d 316, 336 (2d Cir. 1964)). He therefore concludes that "the predominating purpose [of the grand jury subpoenas] is to gather evidence for trial, in circumvention of the federal rules that govern post-indictment, pretrial discovery," and that the subpoenas should be quashed accordingly. [D.E. 15 at 19].

A grand jury has broad investigative authority when determining whether a crime has been committed and in identifying the perpetrators. *See United States v. Calandra,* 414 U.S. 338, 344 (1974). A grand jury investigation is thus not complete until all clues and evidence have been exhausted and every witness examined. *See id.* There is also a strong presumption "that a grand jury acts within the legitimate scope of its authority," *R. Enters., Inc.,* 498 U.S. at 300, and that a "subpoena should issue, even though the prosecutor possibly will use the information procured for a purpose other than obtaining evidence for the particular grand jury investigation." *United States v. Alred*, 144 F.3d 1405, 1413 (11th Cir. 1998) (citing *In re Grand Jury Proceedings No. 92–4,* 42 F.3d 876, 878 (4th Cir. 1994)). "Although the government may not use a grand jury for discovery concerning a pending

14

prosecution, it may continue an investigation from which information relevant to a pending prosecution 'may be an incidental benefit.'" *United States v. Beasley,* 550 F.2d 261, 266 (5th Cir.1977); *see Beverly v. United States,* 468 F.2d 732, 743 (5th Cir. 1972).

Here, Defendant has not presented any compelling evidence that the purpose of the ongoing grand jury investigation is to gather evidence for the purpose of a pending prosecution. *See United States v. Alvarado*, 840 F.3d 184, 189–90 (4th Cir. 2016) ("[T]o protect the grand jury's investigative function, this court has repeatedly recognized that district courts should refrain from intervening in the grand jury process absent compelling evidence of grand jury abuse.") (citing *United States v. Moss*, 756 F.2d 329, 331-32 (4th Cir. 1985)). The record only shows, if anything, that the Government is continuing its investigation of the underlying fraud and gathering information relevant to possible charges against co-conspirators.

To be sure, Defendant is operating on a mere hunch with respect to the purpose of the grand jury investigation because he fails to point to anything to substantiate his claim that the Government is gathering evidence against him. [D.E. 23 at 10 ("[I]t is difficult to imagine that the grand jury subpoenas in this case will confer only an 'incidental benefit' to the prosecution in this case.")]; *see also In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d at 30 ("[T]he rule barring use of the grand jury to gather evidence to prepare for trial on an already pending indictment 'is difficult, if not impossible, to enforce.'") (citation omitted); *United States v. Alvarado*, 840 F.3d 184, 189 (4th Cir. 2016) ("Under our

precedent on grand jury abuse, this court adheres to 'the universal rule' that prosecutors cannot use grand jury proceedings for the 'sole or dominant purpose' of preparing for trial on an already pending indictment.") (citing *Moss*, 756 F.2d at 332).

This is woefully inadequate because Defendant bears the burden of rebutting the presumption[7] of regularity attached to a grand jury proceeding:

> Defendants alleging grand jury abuse bear the burden of rebutting the presumption of regularity attache[d] to a grand jury's proceeding. This presumption is further strengthened where, as here, a grand jury returns new indictments with additional charges or defendants. Indeed, some of our sister circuits have gone so far as to hold that the government has an automatic safe harbor when the superseding indictment adds new charges or new defendants.

*United States v. Alvarado*, 840 F.3d 184, 189–90 (4th Cir. 2016) (internal citations and quotation marks omitted). Because speculation alone is insufficient to prove grand jury abuse and Defendant has not otherwise presented any other evidence in support of the relief sought, the motion to quash the grand jury subpoenas is **DENIED**.

### *IV. CONCLUSION*

For the foregoing reasons, Defendant's motion to quash the Government's two grand jury subpoenas [D.E. 15] is **DENIED**.

---

[7] The presumption is strengthened when a grand jury returns new indictments with additional charges or defendants. *See Moss*, 756 F.2d at 332–33. And some circuit courts have found that the Government has an automatic safe harbor when the superseding indictment adds new charges or new defendants. *See United States v. Flemmi*, 245 F.3d 24, 30 (1st Cir. 2001). Defendant has failed, however, to discuss whether the grand jury has returned any additional charges against him or potential co-defendants. Given that Defendant has the burden of showing grand jury abuse and he has failed to do so, his allegations ring hollow.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 23rd day of July, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge