UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-20321-CR-ALTONAGA/Torres

**UNITED STATES OF AMERICA**,

    Plaintiff,

vs.

**MICHAEL STEIN**,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** came before the Court on the Government's *Ex Parte* Motion for Authorization to Release Material Subject to the Crime-Fraud Exception [ECF No. 198], filed on February 28, 2023. Defendant, Michael Stein, filed a Response [ECF No. 223], to which the Government filed a Reply [ECF No. 230]. Defendant also separately filed Timeliness Objections to the Motion [ECF No. 227] (the "TOM"), on March 13, 2023; to which the Government filed a Response [ECF No. 248] (the "RTOM").[1] The Court has considered the record, the parties' written submissions, and applicable law. For the following reasons, the Motion is granted.

**I. BACKGROUND**

This privilege dispute arises from the prosecution of Defendant for his participation in a conspiracy to defraud the United States out of more than $51 million. Defendant owned and operated two Florida healthcare companies: 1523 Holdings, LLC and Growthlogix, LLC. (*See* Indictment [ECF No. 1] 7).[2] Defendant allegedly used these companies to arrange the payment of

---

[1] The Court bifurcated the briefing on these issues in its March 6, 2023 Paperless Order [ECF No. 217].

[2] The Court relies on the pagination generated by the Case Management/Electronic Case Files system, which appears in the header on all filings.

illegal kickbacks to healthcare providers in exchange for their ordering medically unnecessary genetic testing and telemedicine consultations for Medicare beneficiaries. (*See id.* 11–12). These providers submitted more than $73 million in fraudulent Medicare claims. (*See id.* 12). For this arrangement, Defendant allegedly received kickbacks from his co-conspirators. (*See id.* 10). Defendant has been charged with (1) conspiracy to defraud the United States and pay and receive kickbacks; and (2) solicitation and receipt of kickbacks in connection with a federal health care program, in violation of the Anti-Kickback Statute. (*See id.* 8–15 (citing 18 U.S.C. § 371; 42 U.S.C. §§ 1320a-7b(b)(1)(B)).

At issue here is whether the Government's Filter Team may use the crime-fraud exception to release to the Prosecution Team certain documents which Defendant claims are otherwise protected by attorney-client, attorney work product, and common interest privileges. (*See generally* Mot.).[3] Much of this case's history has revolved around privilege disputes — namely, Defendant's ability to assert claims of privilege over communications between his co-conspirators and other counterparties and their counsel based on the common interest they all shared. (*See generally* May 24, 2022 Order [ECF No. 110]). The Court has previously recognized Defendant's common interest protections (*see generally id.*); indeed, for those documents and communications to which Defendant is not even a party (*see, e.g.*, Mot., Ex. B, Mar. 24, 2019 Email [ECF No. 198-3] 2), his "privilege theory" rests "only" on "his formerly common legal interests with the

---

[3] The Government designated a separate "Filter Team" for the review of potentially privileged materials. (*See* Order on Gov't's Mot. for Disc. Protocol [ECF No. 58] (the "Order on Disc. Protocol"); Nov. 30, 2021 Order [ECF No. 76] (denying appeal of Order on Disc. Protocol)). The Filter Team "identified, segregated, and placed into a privilege-dispute protocol" any potentially privileged materials it encountered in discovery. (Order on Disc. Protocol 2). This process separated potentially-privileged materials — until the appropriate time — from the "Prosecution Team," which is otherwise responsible for the investigation and prosecution of the case. (*See generally id.*); *see also In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means (Korf)*, 11 F.4th 1235, 1247 (11th Cir. 2021) (approving use of filter-team protocols).

counterparties" (June 9, 2022 Order [ECF No. 123] 7 (citing *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007))).  For the sake of simplicity — and based on Magistrate Judge Edwin Torres's prior rulings regarding which documents are privileged (*see, e.g.*, January 24, 2023 Sealed Order [ECF No. 188]) — the Court will treat all of the materials at issue as privileged.[4]

The records at issue may be summarized as documents concerning "the drafting and negotiation of the Master Services Agreement ([the] 'MSA') between Panda Conservation Group, LLC and its subsidiaries ('Panda') and [Defendant's] companies [], effective in or around April 1, 2020 (together the 'MSA Communications')."[5]  (Mot. 1–2 (alterations added)).  According to the Indictment, Defendant and his co-conspirators "concealed and disguised the[ir] scheme" with the use of the MSA, which was in fact "a sham contract."  (Indictment 11 (alteration added); *see id.* 12–13).  And during the negotiation and drafting of the MSA, the co-conspirators "omitted and misrepresented key facts . . . in order to obtain legal approval" from counsel.  (Mot. 16 (alteration added; citation omitted)).  Defendant contests this interpretation of events.  (*See generally* Resp.).

The MSA Communications "include all communications between Defendant and his companies, and owners or agents of Panda . . . regarding the drafting and negotiation of the MSA."

---

[4] Because of this assumption, the Court does not address the parties' arguments over whether a large subset of documents is even privileged in the first place.  (*See* Mot. 19–20; Resp. 5–11; Reply 7–10).  This subset consists of emails exchanged between Defendant and an email address beginning with "Janet S." or "Janet R."  (Mot. 19–20; *see, e.g.*, *id.*, Ex. S, Mar. 30, 2020 Email to Janet S. [ECF No. 198-20] 2).  According to Defendant, this email address belonged to his father, Dr. Emil Stein.  (*See* Resp. 5).  Defendant argues these documents are privileged by virtue of a power-of-attorney executed between Defendant and his father.  (*See* Resp. 5).  The Government convincingly refutes the ability of the power-of-attorney to confer privilege under the circumstances here.  (*See* Reply 7–10).

As explained in this Order, the crime-fraud exception applies to all the documents at issue, and so the Court need not resolve the power-of-attorney dispute.  Either because there is no privilege over these documents, or because the crime-fraud exception applies, these materials may be released to the Prosecution Team.

[5] Panda owned the laboratories which performed the allegedly unnecessary genetic testing.  (*See* Indictment 6).  Panda's co-owners were Leonel Palatnik, Gustavo Geraldes, Munear Kouzbari, and Danny Yoo.  (*See* May 24, 2022 Order 2 n.1).

(Mot. 2 (alteration added; footnote call number omitted)). These include communications between "[Kouzbari], [Palatnik], Christopher Lee AKA Christopher Hutson [], and [Geraldes], Defendant, and counsel for Panda, including law firms Weaver, Johnston & Nelson, P.L.L.C..; Oberheiden P.C., and Sorrels Hagood (together, the 'Law Firms')[.]" (*Id.* (alterations added; footnote call number omitted)).

The Government now moves to apply the crime-fraud exception, remove any privilege over the MSA Communications, and provide those documents to the Prosecution Team. (*See generally* Mot.).

## II. LEGAL STANDARD

Traditionally, the attorney-client privilege, like the privilege extending to attorney work product, is "sacrosanct." *Drummond, Inc. v. Collingsworth*, No. 2:11-cv-3695, 2015 WL 13768169, at *2 (N.D. Ala. Dec. 7, 2015). "The purpose of the privilege is 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334 (11th Cir. 2018) (quoting *United States v. Zolin*, 491 U.S. 554, 562 (1989)).

Nevertheless, "the 'attorney-client privilege does not protect communications made in furtherance of a crime or fraud.'" *In re Grand Jury Subpoena*, 2 F.4th 1339, 1345 (11th Cir. 2021) (quoting *In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1226 (11th Cir. 1987) ("*Schroeder*")). "The crime-fraud exception allows a party . . . to obtain discovery that otherwise would be protected by the attorney-client privilege or the attorney work product doctrine." *Drummond*, 885 F.3d at 1335 (alteration added). The exception can similarly dispel claims of

common interest privilege. *See United States v. Esformes*, No. 16-cr-20549, 2018 WL 5919517, at *14 (S.D. Fla. Nov. 13, 2018).

Courts apply a two-part test to assess whether the crime-fraud exception applies to documents that might otherwise be protected by privilege:

> First, there must be a *prima facie* showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.

*Schroeder*, 842 F.2d at 1226 (citations omitted). Should both prongs be satisfied, "the crime-fraud exception removes the 'seal of secrecy' from attorney-client communications or work product materials when they are made in furtherance of an ongoing or future crime or fraud." *Drummond*, 885 F.3d at 1335 (citations omitted).

### III. DISCUSSION

The Government seeks to release documents from the Filter Team that are otherwise privileged. (*See generally* Mot.). These documents — the MSA Communications — consist of communications regarding the negotiation and drafting of the MSA, an allegedly "sham contract" that was used to provide cover to Defendant's illegal scheme. (*Id.* 4 (citing Indictment 11)). Because Defendant has claimed privilege over the MSA Communications, the Government seeks to dispel any privilege using the crime-fraud exception. (*See generally id.*). According to Defendant, neither prong of the exception has been satisfied, and the Motion is not timely. (*See generally* Resp.).

Defendant fails to persuade. The Government satisfies both prongs of the exception. The Indictment returned by the grand jury, coupled with the Government's other proffered evidence, establish a *prima facie* showing sufficient to clear the first prong's "low hurdle." *In re Grand Jury*

5

*Subpoena*, 2 F.4th at 1345. And the MSA Communications "are sufficiently related to the" criminal activity established in the first prong. *Id.* at 1349. Lastly, Defendant's timeliness objections are meritless. The Court addresses each issue in turn.

### A. The Government has made a *prima facie* showing of criminal activity.

The first prong of the crime-fraud exception requires the Government to make a *prima facie* showing of criminal activity. *See Schroeder*, 842 F.2d at 1226. This standard is met "by a showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed." *Id.* (citations and footnote call number omitted). "This is a low hurdle." *In re Grand Jury Subpoena*, 2 F.4th at 1345.

This "prong is often understood to require 'probable cause' to suspect the perpetration or attempted perpetration of a crime or fraud." *Drummond*, 2015 WL 13768169, at *3 (citing *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1039 (2d Cir. 1984)). While "mere allegations of criminality are insufficient[,]" the Government need only "some" factual foundation — it is not required "to prove the existence of a crime or fraud beyond a reasonable doubt." *In re Grand Jury Subpoena*, 2 F.4th at 1345 (alteration added; citations and quotations marks omitted). Indeed, simply "a good faith statement by the prosecutor as to what evidence is before the grand jury" can itself suffice to establish the requisite showing. *Schroeder*, 842 F.2d at 1226 (citations omitted). Once the *prima* facie showing has been made, the party asserting privilege may rebut the showing by "giv[ing] a reasonable explanation of its conduct[]" that satisfies the Court. *Gutter v. E.I. Dupont De Nemours*, 124 F. Supp. 2d 1291, 1307 (S.D. Fla. 2000) (alterations added; footnote call number omitted).

The Government argues the Indictment itself is a *prima facie* showing of criminal activity. (*See* Mot. 13–14). Should that be insufficient, the Government also points to the other evidence

attached to its Motion, including sworn statements from two of Defendant's co-conspirators and other witness testimony, to make a *prima facie* showing. (*See id.* 14–15).

Defendant raises three arguments in response. (*See generally* Resp.). Defendant first argues that the Indictment — which provides probable cause as determined by a grand jury[6] — falls below the level of a *prima facie* showing of criminal or fraudulent activity. (*See id.* 11). Second, Defendant argues that the Government's other evidence is insufficient and conflicting and thus rebuts the *prima facie* showing. (*See id.* 12, 14–21). Third, Defendant challenges the very sufficiency of the Indictment, incorporating the argument he makes in his Motion to Dismiss Indictment Based on Failure to Adequately Allege Stein Offered, Paid, Solicited, or Received, or Conspired to Offer, Pay, Solicit, or Receive, Illegal Kickbacks and Bribes [ECF No. 203] (the "First Rule 12 Motion"), filed on February 28, 2023. (*See* Resp. 12–13). The Court addresses and rejects these arguments below.

    i.    *The Indictment*

To start, the Indictment presents a straightforward "foundation" for a *prima facie* showing of criminal activity. *In re Grand Jury Subpoena*, 2 F.4th at 1345 (citation omitted); (*see generally* Indictment). According to the Indictment, from "March 2019 [through] March 2021," Defendant participated in a scheme where he received "illegal kickbacks and bribes . . . in exchange for his arranging for telemedicine providers to order genetic testing for Medicare beneficiaries." (Indictment 8, 10 (alterations added)). He "paid, and caused to be paid, illegal kickbacks and bribes to health care providers in the form of referrals of [patients recruited by his co-conspirators], in exchange for the health care providers ordering medically unnecessary genetic testing." (*Id.* 10

---

[6] "An indictment . . . returned by a . . . grand jury . . . conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged." *Kaley v. United States*, 571 U.S. 320, 328 (2014) (alteration adopted; other alterations added; citation and quotation marks omitted).

(alterations added)). Defendant and his co-conspirators "concealed and disguised the scheme and the payment and receipt of illegal kickbacks and bribes by executing a sham contract, labeling payments as purported 'consultation and IT services,' and creating and maintaining false and fraudulent documents." (*Id.* 11). This scheme ultimately "caused health care providers to order genetic testing for Medicare beneficiaries that was procured through the payment of kickbacks and bribes, medically unnecessary, ineligible for Medicare reimbursement, and not provided as represented[,]" resulting in over "$73 million in false and fraudulent claims to Medicare." (*Id.* 11–12 (alteration added)).

Put another way: rather than just the Government's "good faith statement" regarding the evidence, the grand jury has already been "satisfied by a showing of evidence that . . . establish[es] the elements of" criminal or fraudulent activity. *Schroeder*, 842 F.2d at 1226 (alterations added); (*see* Indictment 8–15). This demonstration of criminal activity should end the matter. *See United States v. Gorski*, 807 F.3d 451, 461 (1st Cir. 2015) ("[T]he indictment provides a reasonable basis to believe [Defendant] was engaged in criminal or fraudulent activity." (alterations added)).

Undeterred, Defendant first attacks the Indictment by describing his concerns with the very nature and process of grand jury proceedings, bemoaning that "the [G]overnment is under no duty to [put forward] exculpatory evidence" nor provide "a defendant [the] opportunity to be heard[.]" (Resp. 12 (alterations added)). Defendant's issues with grand juries, which occupy a "vital role . . . in our system of jurisprudence[,]" are misplaced. *In re Grand Jury Proceedings*, 691 F.2d 1384, 1387 (11th Cir. 1982) (alterations added; citation omitted). Certainly, even absent judicial proceedings — like the one here — grand juries frequently use the crime-fraud exception to compel the production of, and review, otherwise privileged materials. *See, e.g.*, *In re Grand Jury Subpoena*, 2 F.4th at 1341. And "the existence of [Defendant's] potential defense[s]" or allegedly

8

exculpatory evidence, both of which Defendant is free to present at trial, does not prevent the Government from making a *prima facie* showing for the purposes of the crime-fraud exception. *In re Grand Jury Subpoena*, 220 F.3d 406, 410 (5th Cir. 2000).

Next, Defendant attempts to differentiate the grand jury's determination of probable cause from the *prima facie* showing of criminal activity which the exception's first prong requires. (*See* Resp. 11–12). This argument suffers from multiple flaws, the most obvious of which is the dearth of authority Defendant identifies in support of this position. (*See id.*; *see also* Reply 4 n.5 (noting the same)). At best, Defendant cites cases discussing probable cause in claims arising under 42 U.S.C. section 1983, including one recent case where — in analyzing the interaction between probable cause and warrantless searches and seizures — the Eleventh Circuit described "[p]robable cause [as] a 'reasonable ground for belief of guilt, supported by less than *prima facie* proof but more than mere suspicion.'" *Adams v. Office of Governor*, 818 F. App'x 887, 888 (11th Cir. 2020) (alterations added; quoting *United States v. $242,484.00*, 389 F.3d 1149, 1160 (11th Cir. 2004)).

At first glance, this language might seem to support Defendant's contention that the Indictment alone does not make a *prima facie* showing of criminal activity, even if it provides probable cause. (*See* Resp. 12). But Defendant's argument asks the Court to ignore the lack of discussion in any of his cited cases regarding the "sufficiency of [an] indictment to establish [a] *prima facie* case for crime-fraud purposes[.]" (Reply 4 n.5 (alterations added; citations omitted)). His argument would also have the Court ignore persuasive authority precisely holding that, for crime-fraud purposes, an "indictment provides a reasonable basis to believe that [a defendant] was engaged in criminal or fraudulent activity." *Gorski*, 807 F.3d at 461 (alteration added); *see also*

*United States v. Joyce*, 311 F. Supp. 3d 398, 407 (D. Mass. 2018) (same). The Court declines to ignore these obvious issues.

    *ii.*    *Additional Evidence*

Defendant's focus on the Indictment also ignores the copious amounts of other evidence the Government provides — including sworn statements from two of Defendant's alleged co-conspirators, Palatnik and Geraldes, as well as other witness interviews. (*See generally* Mot., Exs. K–P [ECF Nos. 198-12–198-17]; Reply, Ex. 1 [ECF No. 230-1]). Both parties also attach numerous documents to their memoranda, including some privileged materials. (*See generally* Mot., Exs. A–J, S [ECF Nos. 198-1–1982-12, 198-20]; Resp., Exs. 1–8 [ECF Nos. 223-1–223-8]).[7]

This additional evidence only further supports the criminal activity established by the Indictment. (*See* Mot. 14–15). One of Defendant's co-conspirators, Palatnik, admits that he provided Defendant with "kickback[s] or bribe[s]" and that the parties "entered into a sham contract . . . in order to disguise the true purpose of the payments[.]" (*Id.* 14 (alterations added; citation and quotation marks omitted); *see also* Mot., Ex. P, Palatnik Decl. [ECF No. 198-17] 2). Another of Defendant's co-conspirators, Geraldes, admits that Defendant "arrange[d] for telemedicine providers" and that it was understood Defendant was to act as a "telemedicine provider" (Mot. 15 (alteration added; citation and quotation marks omitted); *see also id.*, Ex. O, Geraldes Decl. [ECF No. 198-16] 2)) — even though the parties deliberately omitted the telemedicine language from the MSA, which only described Defendant as an IT "consultant." (Mot., Ex. C, Mar. 31, 2020 Email 2, 4). And the co-conspirators consulted with attorneys, and each other, to draft and receive legal approval of the MSA. (*See, e.g., id.* 2 (Defendant explaining

---

[7] The Government also provided, for *in camera* review, the full universe of MSA Communications which it seeks to release to the Prosecution Team. (*See* Mar. 1, 2023 Order [ECF No. 209]).

that he "changed 'Software Provider' [in the draft MSA] to consultant and removed any references to telemed[ecine]/doctors[,]" to assuage counsel's concerns. (alterations added)); *see also* Mot., Ex. D [ECF No. 198-5] 2–3 (emails between co-conspirators and counsel regarding changes to the MSA)).

Taken together, the evidence makes a *prima facie* showing of a fraudulent scheme to violate the Anti-Kickback Statute and defraud Medicare, and that Defendant and his co-conspirators misled lawyers in their efforts to conceal that scheme. (*See* Mot. 15; *see also id.* 5 ("As a result of these intentional misstatements and material omissions to counsel, the parties obtained the Law Firms' legal advice and approval of an MSA.")). This conclusion is the same one reached by the grand jury, which found probable cause for the scheme's existence. (*See generally* Indictment).

Defendant takes a different view. Defendant seeks to undercut the Government's evidence by presenting his own conflicting interpretations of documents and statements, as well as attacking the credibility of certain witnesses. (*See* Resp. 14–21). The Court assumes this is Defendant's attempt to "rebut" the Government's *prima facie* showing of criminal activity. *Gutter*, 124 F. Supp. 2d at 1307 (footnote call number omitted). Defendant declines to characterize his rebuttal as such, instead simply insisting that "[t]he evidence recently submitted . . . conflicts with earlier, far more reliable evidence from the same and other witnesses[.]" (Resp. 14 (alterations added)). Regardless, Defendant's rebuttal is unpersuasive.

Critically, Defendant does not explain why his evidence is "far more reliable[.]" (*See generally* Resp.). Presumably, this assertion is meant to highlight the different statements that Defendant's co-conspirator, Palatnik offered to the Government before his Indictment (*see generally* Resp., Ex. 6, May 18, 2021 Palatnik Proffer Interview [ECF No. 223-6]), as compared

to the statements he provided after finalizing his guilty plea before the Undersigned (*see generally* Agreed Factual Basis for Guilty Plea [ECF No. 37]). (*See also* Resp. 18–19). But this change in testimony is not a sufficiently reasonable rebuttal; if anything, it would be unreasonable to simply accept Defendant's argument that Palatnik's cooperation now renders his current testimony unreliable. *See Kuenzel v. Comm'r, Alabama Dep't of Corr.*, 690 F.3d 1311, 1317 (11th Cir. 2012) (explaining it would be unreasonable to assume that a witness changing "his story after becoming a cooperating witness" means "the first story was true or that his later story was false").

Defendant's insufficient rebuttal aside, the Court will not assume the role of factfinder on the eve of trial. As discussed, the Indictment and additional evidence provide a sufficient "foundation in fact[]" to satisfy the Government's burden. *Schroeder*, 842 F.2d at 1226 (alteration added; citations omitted). And Defendant's proffered "reasonable explanation[,]" *Gutter*, 124 F. Supp. 2d at 1307 (alteration added), would have the Court make critical evidentiary determinations better left for trial, including questions on witness credibility and Defendant's intent. In light of the otherwise "overwhelming[]" *prima facie* showing, *In re Grand Jury Subpoena of Connelly*, 28 F.3d 106 (9th Cir. 1994) (unpublished) (alteration added), the Court declines to "assess the credibility of evidence when analyzing whether the crime-fraud exception applies" here, *Jones v. Tauber & Balser, P.C.*, 503 B.R. 162, 181 (N.D. Ga. 2013) (citation omitted; relying on equivalent standards of the crime-fraud exception under federal and state law). The factfinder in this case will be the jury that Defendant himself has requested (*see* Arraignment [ECF No. 18]) — not the Court.

    *iii.*     *Rule 12 Arguments*

Given the sufficiency of both the Indictment and the additional evidence to satisfy the exception's first prong, Defendant is left with only one remaining argument: that the Indictment

"does not even adequately allege that [Defendant] was engaged in criminal or fraudulent conduct." (Resp. 12 (alteration added)). In support, Defendant expressly incorporates the arguments he makes in his First Rule 12 Motion. (*See id.* 12).

This argument is misplaced. Whatever the merits of Defendant's arguments to dismiss the Indictment under Federal Rule of Criminal Procedure 12 — which the parties have separately briefed (*see generally* First Rule 12 Mot.; Resp. to First Rule 12 Mot. [ECF No. 241]) — those arguments have little place here, where the issue is whether the Government has made "a *prima facie* showing that [Defendant] was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice." *Schroeder*, 842 F.2d at 1226 (alteration added). Given that the Government need not "prove the existence of a crime or fraud beyond a reasonable doubt[,]" Defendant's Rule 12 arguments are inapt here. *In re Grand Jury Subpoena*, 2 F.4th at 1345 (alteration added; quoting *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985)). In other words, "the legal sufficiency of the allegations [should] be resolved in [Defendant's] pending motion to dismiss" — and not by this separate Motion. (Reply 4 (alterations added)).

In sum, the Government's evidence is sufficient to clear the "low hurdle[]" the first prong presents; the Government has made a *prima facie* showing of ongoing and future criminal activity at the time Defendant, and those within his common interest group, consulted counsel. *In re Grand Jury Subpoena*, 2 F.4th at 1345 (alteration added).

### B.   Counsel's assistance was related to and in furtherance of the criminal activity.

With the first prong satisfied, the Court proceeds to the second prong, which requires "a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent

activity or was closely related to it." *In re Grand Jury Subpoena*, 2 F.4th at 1349 (quoting *Schroeder*, 842 F.2d at 1226). This is satisfied by "a showing that the communication is related to the criminal or fraudulent activity established under the first prong." *Schroeder*, 842 F.2d at 1227. While "[c]ourts have enunciated slightly different formulations for the degree of relatedness necessary to meet that standard[,]" the Eleventh Circuit has cautioned that this requirement "should not be interpreted restrictively." *Id.* (alterations added; citations omitted).

Here, assessing the relatedness requirement is straightforward because the MSA Communications plainly "relate[] to the [scheme] established under the first prong." *Id.* (alterations added). To recap: the Government has made a *prima facie* showing that Defendant, and others within his common interest group, engaged in a scheme to violate the Anti-Kickback Statute and defraud Medicare; and they consulted with lawyers to prepare the MSA to provide cover for that scheme. (*See generally* Indictment; Mot.). Whether this alleged scheme actually occurred or not, Defendant does not — and cannot — "den[y] that [he] and his co-conspirators communicated with attorneys at the Law Firms relating to the conduct in the first prong[.]" (Reply 5 (citing Resp. 17; footnote call number omitted)). In light of the Eleventh Circuit's recent confirmation that "the degree of relatedness required . . . should not be interpreted restrictively[,]" this satisfies the second prong. *In re Grand Jury Subpoena*, 2 F.4th at 1350 (alterations added; citation and quotation marks omitted).

Faced with this obvious conclusion, Defendant raises two arguments. (*See* Resp. 13–14). First, Defendant argues that the Court should apply a stricter standard than the law requires and "submits that the Government must demonstrate how [the MSA Communications were] made in furtherance of the alleged crime or fraud[.]" (*Id.* 13 (alterations added; emphasis in original omitted)). Second, Defendant once again references his arguments from the First Rule 12 Motion,

14

as well as arguments he raises in his separate Motion to Dismiss the Indictment Based on the Grand Jury's Consideration of Attorney-Client-Privileged Materials [ECF No. 206] (the "Second Rule 12 Motion"), filed on February 28, 2023. (*See* Resp. 14). Neither argument succeeds.

> i.      *Related and in Furtherance of*

Defendant first asks the Court to apply a different standard than the law requires. (*See id.* 13). According to Defendant, each document at issue must have been "made in *furtherance* of the alleged crime or fraud before it is subject to disclosure, as some circuits hold[.]" (*Id.* (alteration added; emphasis in original)). Admittedly, the Eleventh Circuit recently acknowledged that "some [other] circuits have disclaimed any focus on 'relatedness' and instead focused exclusively on whether the communications at issue were made 'in furtherance' of the crime or fraud." *In re Grand Jury Subpoena*, 2 F.4th at 1350 (collecting cases). But in the very next sentence, the court went on to discuss the "less restrictive view" this Circuit has taken as to "the degree of relatedness required[.]" *Id.* (alteration added; citation omitted). Importantly, the court expressly declined to revisit this lower standard and adopt the stricter formulation. *See id.*

Defendant wisely concedes that the "Eleventh Circuit has not adopted his view[.]" (Resp. 13 (alteration added)). But even if the Court were to apply a heightened standard and only dispel privilege from those "communications made *in furtherance* of a crime or fraud[,]" that would not leave Defendant better off. *In re Grand Jury Subpoena*, 2 F.4th at 1350 (alteration added). As discussed at length, the Government has made a *prima facie* showing that the MSA communications were at the least in furtherance of, if not critical to, the alleged scheme. According to that showing, the MSA "concealed and disguised the scheme" and the exchange of the "illegal kickbacks and bribes[.]" (Indictment 12 (alteration added)). And Defendant and his co-conspirators consulted amongst each other and with counsel in order to craft this MSA; as the

15

Court has already described, Defendant's claimed common interest protections over many of these documents expressly rely on these negotiations. (*See* June 7, 2022 Order 7; Reply 6–7).

At bottom, Defendant cannot credibly claim that communications regarding the negotiation and drafting of the contract were not performed "in furtherance" of an alleged scheme which itself relied on that contract. *In re Grand Jury Subpoena*, 2 F.4th at 1350; *see also United States v. Cleckler*, 265 F. App'x 850, 854 (11th Cir. 2008) (describing second prong as satisfied with showing that the defendant provided fabricated documents to the IRS through counsel, thus using counsel "to further [the defendant's] fraudulent activity" (alteration added)); (Reply 6 n.10 ("[The] MSA Communication[s] related to the parties' use of counsel to further and conceal the ongoing scheme[.]" (alterations added))). Therefore, even under the stricter standard, the Government has made a sufficient showing to satisfy the second prong. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1417 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) (finding that the second prong was not met when the plaintiff failed "to produce *any* evidence that" the privileged materials were related to or in furtherance of the criminal activity alleged in the first prong (emphasis added)).[8]

  ii.   *Rule 12 Arguments*

Because the MSA communications clearly "relate[] to the criminal or fraudulent activity established under the first prong[,]" *Schroeder*, 842 F.2d at 1227 (alterations added), Defendant is left only with his second argument, which simply incorporates and restates the arguments he makes

---

[8] Defendant also argues that the Government fails to meet second prong because "there is no allegation in the [I]ndictment [] about any of the alleged co-conspirators consulting with lawyers." (Resp. 13 (alterations added)). Given that "consulting with lawyers" is not an element of either crime Defendant has been charged with, it is unsurprising that the Indictment does not explicitly include his requested allegation. (*See* Indictment 8–15 (citing 18 U.S.C. § 371; 42 U.S.C. §§ 1320a-7b(b)(1)(B))). Regardless, Defendant confuses the Government's showing for the exception's first prong — where the Indictment is used to establish a *prima facie* showing of criminal activity — with the showing on the second prong, which instead focuses on whether the MSA Communications relate to the criminal activity demonstrated in the first prong.

in his two Rule 12 Motions. (*Compare* Resp. 13–14 *with* First Rule 12 Mot. *and* Second Rule 12 Mot.). But Defendant's references to the First Rule 12 Motion are inapplicable to the exception's second prong, just as they are inapplicable to its first prong. The Court will resolve those arguments in the context of the other Motion, and not here. And Defendant's references to his arguments in the Second Rule 12 Motion similarly fail. In fact, those arguments rest on even weaker footing, given that this Order — finding that the crime-fraud exception applies to the MSA Communications — renders the Second Rule 12 Motion "moot." (Resp. to Second Rule 12 Mot. [ECF No. 231] 5).

In sum, the Government has demonstrated that the MSA Communications were at least "related to" the criminal activity established in the first prong. *Cox*, 17 F.3d at 1417. Accordingly, it has satisfied the exception's second prong.

### C. **Timeliness**

Defendant raises one final argument, unrelated to the merits of the crime-fraud exception. Defendant claims the Motion was not timely filed, and so the Government has waived the ability to move for application of the exception. (*See generally* TOM).

Defendant's timeliness argument rests on his belief that the Government waived its ability to raise the crime-fraud exception because it waited too long to appeal the January 24, 2023 Sealed Order, in which Magistrate Judge Torres noted that "[t]he only disputed matters with respect to privilege review in the case are addressed here." (*Id.* 4 (alteration added; citing Jan. 24, 2023 Sealed Order 22)). The deadline to appeal the decision — which itself makes no mention of the crime-fraud exception — was January 30, 2023. (*See id.* 23). According to Defendant, the appeal of the Sealed Order provided the final mechanism by which any attack on the privilege of MSA Communications could be raised, and so the Motion is untimely.

The Government explains that Defendant misconstrues the January 24, 2023 Sealed Order. (*See* RTOM 5). Further, the Government argues both the parties and the Court have always operated under the impression that resolving the threshold privilege question, including that of common interest privilege, must necessarily be performed before resolving the applicability of the crime-fraud exception. (*See generally* RTOM). The Court agrees with the Government.

The January 24, 2023 Sealed Order resolved "the remaining disputes revolv[ing] around the Government's challenges to documents . . . produced by Defendant [] that [were] purportedly protected by the common interest privilege." (*Id.* 1 (alterations added)). So, should the Government have wished to appeal Magistrate Judge Torres's determinations on the privilege of documents addressed in that decision, it did in fact only have until January 30, 2023 to do so. (*See id.* 23). But the Government does not take issue with the privilege determination; rather, it seeks the application of the crime-fraud exception to dispel that very privilege. (*See generally* Mot.). Nothing in the January 24, 2023 Sealed Order obligated the Government to file its crime-fraud request sooner.

Notably, it is difficult to imagine how the Government could have been timelier. For almost a year, including multiple appearances in court, the parties have disputed the extent of Defendant's privilege assertions, especially of common interest privilege. (*See* Paperless Minute Entries [ECF Nos. 109, 146, 180]). The Government has consistently stated — with no objections from Defendant — that the crime-fraud exception would be resolved after the resolution of privilege assertions. (*See* RTOM 1, 3–5). The last privilege disputes were resolved in the January 24, 2023 Sealed Order; Defendant did not even provide his final privilege log to the Government until February 14, 2023. (*See* Mot., Ex. R, Feb. 14, 2023 Email [ECF No. 198-19] 2). Once the full scope of Defendant's privilege assertions was finalized, the Government provided notice to

the Court of its intention to seek the application of the crime-fraud exception (*see* Paperless Minute Entry [ECF No. 196]), and promptly filed the Motion. Any earlier filing of the Motion — before "the Court[] resolved the scope of [Defendant]'s common interest privilege[]" — would have been both premature and inefficient. (RTOM 1 (alterations added)).

In short, Defendant's claim that the Motion raises "for the first time . . . the [G]overnment's contention that crime[-]fraud exception negates" privilege is perhaps literally true — in the sense that the Motion is the Government's first official request that the Court find the exception applies. (March 6, 2023 Mot. to Extend by Two Days [ECF No. 215] 1 (alterations added)). But Defendant's insinuation of undue delay and surprise simply belies belief. The Motion is timely filed.

## IV. CONCLUSION

In sum, the Government has made the necessary showing for both prongs of the crime-fraud exception, and the Motion was timely filed. Accordingly, it is

**ORDERED AND ADJUDGED** that the Government's Motion **[ECF No. 198]** is **GRANTED**. The Government is free to release the MSA Communications to the Prosecution Team. This Order will not be filed under seal.

**DONE AND ORDERED** in Miami, Florida, this 21st day of March, 2023.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record